# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REBECCA POOLE, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-18-CV-636-XR |
| | § | |
| DHIRU HOSPITALITY, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered Plaintiffs' Motion for Partial Summary Judgment and related filings.[1] By their motion, Plaintiffs seek a partial summary judgment on liability on their FLSA claims, and seek to dismiss Defendant's affirmative defense and counterclaims. The motion will be granted in part and denied in part.

## Background

Plaintiffs Rebecca Poole, Monica Ayala, and Robert Gongora filed this action against their alleged former employer, Dhiru Hospitality, LLC, d/b/a Motel 6, for violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). The First Amended Complaint is the live pleading. Docket no. 5.

Plaintiff Poole alleges that she performed primarily front desk duties and some duties as assistant manager in 2017 and 2018, was paid by the week at a rate of $200/week, regularly worked at least 48 hours per week, and did not receive a paycheck at all some weeks. *Id.* ¶¶ 12-15. Plaintiff Ayala alleges that she performed housekeeping duties from 2016 to 2018 but

---

[1] Docket no. 46, Defendant's Motion for Leave of Court to File Out of Time Response, is granted.

was never paid, despite regularly and frequently working at least 42 hours per week. *Id.* ¶¶ 18-21. Plaintiff Gongora alleges that he performed housekeeping, maintenance, and security duties for Defendant from 2016 to 2018 and regularly worked at least 42 hours per week. *Id.* ¶¶ 23-24. Gongora alleges he was paid $125/week regardless of hours worked, and that he did not receive a paycheck at all some weeks. *Id.* ¶¶ 26-28. Plaintiffs Gongora and Ayala are common-law married, and Defendant provided them with a room at the hotel.

Plaintiffs bring claims under the FLSA, with Plaintiffs Poole and Gongora alleging they never received overtime compensation for weeks they worked over 40 hours, and Plaintiff Ayala alleging she never received any payment from Defendant, either minimum wage or overtime. *Id.* at 2–3. Thus, Poole and Gongora assert claims for failure to pay overtime compensation, and Ayala asserts a claim for failure to pay minimum wage as well as overtime pay. Defendant has denied liability and filed a counterclaim.

Plaintiffs now move for summary judgment on the issue of liability and seek to dismiss Defendant's counterclaim and affirmative defense of fraud. As evidence, Plaintiffs present the Declaration of Rebecca Poole, the Declaration of Monica Ayala, the Declaration of Robert Gongora,[2] and Texas Unemployment Insurance Wage Report Worksheets and IRS Form 941 for the Motel 6. Defendant contends that fact issues remain that preclude summary judgment, and submits the Declarations of Nilesh "Andy" Patel, the President of Dhiru Hospitality d/b/a Motel 6; Kishan Patel, his son; and Bhavisha Patel, his wife.

---

[2] Defendant moves to strike each of the Declarations because they indicate that they were sworn before a notary, but no notary has signed them. Docket no. 41 at 6. However, each Affidavit states, "I declare under penalty of perjury that the above information is true and correct." This is sufficient pursuant to 28 U.S.C. § 1746. Defendant acknowledges that the Declarations do not need to be sworn before a notary. The fact that the Affidavits incorrectly indicate that they are sworn when they are not does not render them deficient.

**Analysis**

In ruling on a motion for summary judgment, the Court must accept the evidence of the nonmoving party as true and draw all justifiable inferences in its favor. Credibility determinations and weighing of the evidence are left to the trier of fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The FLSA provides that employers must pay employees a statutory minimum wage. 29 U.S.C. § 206(a). The FLSA further provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). Once the employee establishes a prima facie case, the burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

**FLSA coverage**

Plaintiffs allege that Defendant employed persons engaged in commerce and/or has been an enterprise engaged in commerce within the meaning of the FLSA. Docket no. 5 ¶ 11.

Plaintiffs' motion asserts that individual coverage is established for Plaintiff Poole and enterprise coverage is established for all Plaintiffs.[3]

Under 29 U.S.C. § 207(a), Plaintiffs must prove they were employees engaged in commerce or in the production of goods for commerce ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)). Either individual or enterprise coverage is enough to invoke FLSA protection. *Martin*, 955 F.2d at 1032.

### All Plaintiffs - FLSA enterprise coverage

The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" to include an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 ....

29 U.S.C. § 203(s)(1). If an employer meets both requirements, then all its employees are subject to the FLSA, unless otherwise exempted by another provision of the act.

Plaintiffs attempt to establish enterprise coverage through their Declarations and Defendant's Texas Unemployment Insurance Wage Report Worksheets. Plaintiffs rely on the

---

[3] Although the Amended Complaint does not expressly assert individual coverage for Plaintiff Poole, some courts have held that Plaintiffs are not required to plead their FLSA claim with such specificity. *See, e.g.*, *Barrett v. Lilly Grove Special Utility Dist.*, No. 9:09-CV-25, 2009 WL 10708472, at *2 n.2 (E.D. Tex. Nov. 2, 2009).

TWC worksheets to establish that the Motel 6 employed eleven individuals, including Poole, in 2017.[4] They offer the following evidence from Poole's Affidavit:

> There are 55 rooms in the hotel. Kishan[5], Andy's son, mentioned a few times they bring in $21,000 per day in revenue. They would bring in more than that during Fiesta, Spring Break, Rodeo, etc. Andy mentioned once that the yearly tax on the property was $95,000. He would sometimes rent rooms by the hour, for like $40.
>
> The minimum charge per room was $55 per room. On the weekend, Andy would charge $65-$80 per room. On the weekends, the rooms were 100% booked. During Spring Break, Fiesta, Rodeo, they would be usually 100% booked.
>
> Seema, Andy's wife, and Andy went on a cruise in August. I was in charge while they were gone. Seema told me then that if I dealt with the police, I should tell them I am the assistant manager. While they were gone, we took in some $55,000 in cash during the nine days I was in charge. I had over $50,000 in cash in my room until Andy and Seema got back.[6]

Defendant contests Poole's assertion that she took in over $50,000 in cash during the nine days the Patels were on vacation, noting that if 70% of transactions were by credit card, as Plaintiffs have asserted, it is not possible that she would take in over $50,000 in cash during that period. Docket no. 41 at 2; Docket no. 42 at 2. Defendant asserts that Poole never mentioned this cash before and would have been violating policy by keeping it in her room rather than depositing it daily in a secure office box.

---

[4] These worksheets are not authenticated. However, according to Plaintiffs, they were produced in discovery (docket no. 34 at 6) and Defendant has not objected to them on the basis of lack of authentication. *See* Local Rule 26(d) ("A party's production of a document in response to written discovery authenticates the document for use against that party in any pretrial proceeding or at trial unless not later than 14 days or a period ordered by the court or specified by Rule CV-16(e), after the producing party has actual notice that the document will be used – the party objects to the authenticity of the document, or any part of it, stating the specific basis for objection.").

[5] Plaintiffs spell his name Keshawn, but it appears that his name is Kishan.

[6] Plaintiffs also offer affidavit testimony from Ayala about what she heard Plaintiff Poole say about the money she took in while the Patels were on vacation, but this evidence is hearsay and not admissible.

Kishan Patel, Andy Patel's son, states that Poole was required to place receipts in the drop box, and he would have known if she brought in that much money because he "was keeping track of all deposits while [his] parents were away." He states that Poole would have violated policy if she kept the cash in her room. Nilesh Patel similarly states that Poole's testimony is not credible, given her statement that 70% of customers paid with credit cards, and that she would be violating policy by keeping cash in her room. Nilesh Patel Aff. at 2-3.[7] Thus, this is a disputed fact issue.

Kishan Patel also denies ever saying that Defendant was bringing in $21,000 per day. Kishan Patel Decl. at 1. Thus, this is a disputed fact issue. In addition, this statement is hearsay and Plaintiffs must establish a hearsay exception for it to be admissible. Under Federal Rule of Evidence 801(d)(2)(D), a statement offered against an opposing party that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Plaintiffs have failed to establish that Kishan Patel was Defendant's agent or employee or spoke on a matter within the scope of that relationship and while it existed. Plaintiffs note that Kishan is not listed as an employee on TWC worksheets even though it appears undisputed that he assisted at the Motel 6 sometimes. Kishan is the son of Andy Patel and Defendant contends that he simply helped out occasionally, as was expected for Indian family members. Docket no. 42 at 2. Plaintiffs seem to agree that Kishan Patel was not a Motel 6 employee. Docket no. 39 at 1. Accordingly, Poole's Affidavit fails to establish enterprise coverage as a matter of law sufficient for summary judgment.

---

[7] Although not included in her Affidavit, Defendant asserts that Bhavisha Patel "will testify that Motel 6 never took in that amount of money in such a short period of time." Docket no. 42 at 2.

Plaintiff Gongora states, "I heard [Andy] talking to a man, probably a customer. He said in a good year, they would take in over $1 million for the year." Gongora Aff. at 2. Nilesh "Andy" Patel states that he "never told anyone that we took in over one million in a good year. This is not something I would have discussed with anyone other than my bank, my accountants, or the government." Nilesh Patel Aff. at 2. Thus, this is a disputed fact issue.[8]

Thus, fact issues remain whether the business had an annual gross volume of business of not less than $500,000. Further, Plaintiffs have not demonstrated as a matter of law that the business "has employees engaged in commerce" to satisfy the first prong for enterprise coverage. Because neither requirement for enterprise coverage is shown as a matter of law, summary judgment is denied on this issue.

### Poole - individual FLSA coverage

For purposes of establishing individual coverage, the FLSA does not define what it means for an employee to be "engaged in commerce." The Fifth Circuit has adopted a "practical test," which asks "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc*., 474 F.3d 828, 829 (5th Cir. 2007) (per curiam) (quoting *Mitchell v. H.B. Zachry Co*., 362 U.S. 310, 324 (1960)) (internal quotation marks omitted).

Plaintiff Poole asserts that she worked as a "front desk person" and as an assistant manager. Defendant disputes that Poole was ever employed as an assistant manager, but admits she worked at the front desk. Plaintiff contends that she was engaged in commerce

---

[8] For this statement to be admissible at trial, Plaintiff must establish that it falls within a hearsay exception, such as a statement by party opponent.

because she accepted payments (cash and credit card), regularly processed credit card transactions,[9] received out of-state phone calls (she estimates that 25% of calls were from out of state), dealt with credit card disputes involving an out-of-state bank, sent and received faxes weekly, many of which were credit card disputes sent to an out-of-state bank, emailed back and forth with corporate headquarters out of state, and monitored and dealt with online reviews and complaints, many of which came from out of state.

Purely local work is not sufficient, but any regular contact with commerce, no matter how small, will result in coverage. *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007). The Fifth Circuit's *Sobrinio* decision, which held that a motel employee whose duties included janitorial work, security, and chauffeuring guests locally was not engaged in interstate commerce, makes clear that the fact that Poole routinely interacted with out-of-state guests is insufficient. But Poole's regular engagement with the tools of interstate commerce in her work, such as regularly taking out-of-state phone calls for reservations, may be sufficient. *See Davis v. Patel*, No. 3:14-CV-00764, 2015 WL 3369637, at *1 (M.D. Tenn. May 22, 2015) (issue of material fact existed as to whether the plaintiff's front desk duties

---

[9] Poole also states that she processed credit card payments from customers all over the United States, and regularly processes those of a regular customer from Arkansas. Poole Decl. at 3. Plaintiffs contend that "[e]mployees who regularly process credit card charges are covered by the FLSA." Docket no. 34 at 4. Plaintiffs cite a DOL Opinion Letter from 1999 stating that employees of non-profit organizations may be individually covered if they are engaged in interstate commerce and "[s]uch employees include those who regularly handle interstate mail and telephone calls, engage in banking or credit card transactions, or receive or handle goods or materials from or destined for out-of-state sources." 1999 WL 1002373 (March 5, 1999). Plaintiffs also cite *Russell v. Continental Restaurant, Inc.*, 430 F. Supp. 2d 521 (D. Md. 2006), which actually found that a plaintiff server at a local restaurant did not have individual coverage even though she processed credit card payments. *Id.* at 525 ("It is also clear that communications with vendors and processing of credit card payments do not bring Plaintiff's claim within the ambit of the FLSA.").

 More recent cases have held that processing credit card transactions locally for a restaurant or business is insufficient to establish individual coverage. *Payne v. Sparkles Hamburger Spot, LLC*, No. 4:17-CV-341, 2018 WL 6517463, at *3 (S.D. Tex. Aug. 14, 2018); *Ovalle v. DRG Concepts, LLC*, No. 3:13-CV-2714-G, 2018 WL 2762553, at *4 (N.D. Tex. June 8, 2018) (restaurant server processing credit cards transactions locally insufficient).

qualified them for individual coverage); *Hill v. Cobb*, No. 3:13-CV-045-SA-SAA, 2014 WL 3810226, at *9 (N.D. Miss. Aug. 1, 2014) (fact that plaintiff routinely communicated with out-of-state clients on the phone and through other means after they returned to another state held sufficient); *Sandles v. Wright*, No. 1:12-cv-309, 2013 WL 5497788, at *7 (E.D. Tex. Oct. 3, 2013) (holding that processing credit card payments for out-of-state campers, in addition to receiving and making out-of-state telephone calls related to booking reservations or contacting out-of-state campers for other reasons and handling mail which either had been sent from or was to be sent to locations outside of Texas, was sufficient). Defendant has not disputed Plaintiff's assertions regarding her work duties, other than challenging her assertion that she sometimes worked as an assistant manager.

Thus, the Court could deem this issue established for purposes of trial. *See* FED. R. CIV. P. 56(a) (noting that a party may move for summary judgment on a part of a claim, and the Court shall grant summary judgment where appropriate); FED. R. CIV. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case."). However, given Poole's heavy reliance on credit card transaction processing and her failure to provide much detailed testimony concerning her other job duties, the Court finds this issue is better left for development at trial. *See* Advisory Committee notes to 2010 Amendment, Subdivision (g) ("Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be

better illuminated by the trial of related facts that must be tried in any event."). Summary judgment on the issue of individual coverage for Poole is denied.

### Employer-employee relationship during applicable time period

Once FLSA coverage has been established, an employee must demonstrate by a preponderance of the evidence that there existed an employer-employee relationship during the periods claimed. All three Plaintiffs allege that they were employed by Defendant.

Defendant concedes that it employed Plaintiff Poole, and states that "Poole had an agreement with Defendant for a salary plus a room at a set price." Docket no. 41 at 3. However, Defendant contends that Poole was never employed as an assistant manager. Nilesh Patel Aff. at 1. Defendant contends in its briefing that Plaintiff Gongora "was under contract as self-employed" (and disputes whether Gongora performed any security work). Docket no. 42 at 2. Defendant denies that it employed Plaintiff Ayala in any capacity.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition may include "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

Plaintiffs provide evidence of an employment relationship through their declarations. Ayala testified that she "started working for Dhiru Hospitality and Motel 6 in August 2016." She states she was with Robert Gongora, who was the maintenance man and cleaned the rooms, and Ayala lived with Gongora in his room at the Motel 6. Ayala states that Gongora "could not get all the rooms done, so Andy Patel would always ask me to help him. He came by my room every day to wake me up and go clean the rooms." Ayala states she kept track of

her time, "hoping Andy would pay me later" because "Andy always knew I was cleaning the motel rooms," though Ayala did not clock in and Patel did not write down when Ayala was doing work.

Plaintiff Gongora states he started working for Motel 6 in August 2016, doing "housekeeping, maintenance and security for Andy." He further states, "I was and still am common-law married to Monica Ayala. Andy would always ask Monica to help me clean rooms. I could not clean all those rooms by myself." He also states, "Andy always asked Monica to work cleaning rooms."

Plaintiff Poole states in her Declaration that she saw "when Andy would call or ask Monica [Ayala] to go clean the rooms" and he "did not pay Monica." Poole states, "I told him he needed to pay Monica and the others, but he would say he did not hire Monica."

Defendant's evidence includes Affidavits. Nilesh "Andy" Patel states, "Monica Ayala was never employed in any capacity. She moved in with Robert Gongora and any work she may have done was to help Gongora because his work performance was very poor and he would frequently miss work. Ayala never worked any hours because she was not employed by Motel 6 and there [are] no work records for her." He further states, "Ayala was not employed, so why would I have to go every day to Ayala's room to wake her up to clean rooms? When Robert would not start cleaning rooms, I would have to go to call him. Often times we would have to start cleaning rooms because Gongora was nowhere to be found." Bhavisha Patel states, "Monica Ayala was never employed in any capacity by Motel 6. Motel 6 never agreed to pay her anything. We would never wake her up to start work. The only times she would be awoken was when we were looking for Robert Gongora."

Defendant correctly points out that Ayala furnishes no documentation that she was employed, nor does she provide any evidence of an express employment agreement. It appears that she is relying on an implied contract of employment, given that she does not present evidence or argument that she and Defendant had a formal contract of employment. Rather, she asserts that Patel directed her to do certain work, and she did that work hoping he would eventually pay her.[10] Defendant essentially argues that there is no evidence of an employment agreement, and denies even asking Ayala to perform any work. The Court agrees with Defendant that fact issues remain concerning whether Ayala was an employee of Defendant.

As to Gongora, Defendant's response to the motion for summary judgment does not directly contest that Gongora was an employee, and instead only argues that he "never performed security work because he was not certified" and it would have been a liability. Gongora states in his Affidavit that he "did housekeeping, maintenance and security for Andy." Gongora Aff. at 1. Poole testified that Andy Patel "would call Robert to go do some security problem, like noisy guests" and he "gave Robert a badge he could wear around his neck." Poole Aff. at 2. Nilesh Patel states, "Gongora was never employed as security." Nilesh Patel Aff. at 3. Bhavisha Patel's Affidavit states "Gongora never provided security services" and "Defendant never gave Gongora a badge to himself out as someone with authority." Bhavisha Aff. at 1-2.

Defendant's briefing states that "[n]o records were kept on Gongora due to the nature of his employment agreement." Docket no. 41 at 4. Defendant also states in its sur-reply that "Gongora was never listed in TWC worksheets because he was under contract as self-

_____

[10] The parties have noted that Plaintiffs Ayala and Gongora have filed a state-court action for *quantum meruit*. Docket no. 45.

employed." Docket no. 42 at 2. It is unclear whether Defendant is challenging Gongora's employment status for FLSA purposes. Neither party addresses the relevant employment factors to determine whether a worker is an employee for FLSA purposes, including: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. 29 U.S.C.A. § 203(e)(1); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369 (5th Cir. 2019). Defendant's assertion that Gongora was "self-employed" is not supported by any evidence. The evidence before the Court tends to suggest that Gongora was an employee, but given the overall lack of evidence on the relevant factors or any official employment records, the Court declines to grant summary judgment on this issue.

Accordingly, Plaintiffs have established that Poole was an employee, but fact issues remain as to whether Ayala and Gongora were employees.

**Employer's violation of FLSA wage requirements**

"Every employer subject to [the FLSA] shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, . . . as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder." 29 U.S.C. § 211(c). Plaintiffs contend that Defendant maintained records for Poole only from November 20, 2017 to December 31, 2017, and that it kept no records for Gongora or Ayala even though they were employees. Plaintiffs assert that

the Court should therefore accept their submitted timesheets of work hours performed as reasonable. Docket no. 34 at 6-7.

Each Plaintiff submits a work schedule with their work hours along with their Affidavits. Defendant contends that the work schedules were not provided in discovery and have been fabricated. However, Plaintiffs respond that all Plaintiffs' hours sheets were provided in discovery on January 15, 2019, pointing to the fact that they are Bates stamped. Docket no. 40 at 1. Defendant contends that it provided company time sheets for Poole, which were furnished to Poole in discovery, and there is a material fact issue insofar as the records differ. Nilesh Patel Aff. at 1. Defendant further challenges all of the Plaintiff's time records as being fraudulent and fabricated. It asserts that the Patels will "dispute the time records and testify that Plaintiffs' records were fabricated." Docket no. 42 at 1. The Court concludes that "the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial" and declines to address this issue at summary judgment. *See* Advisory Comm. Notes 2010 Amendments, Subdivision (g).

### Defendant's counterclaim

Defendant has filed a counterclaim based on "Plaintiffs' unlawful and fraudulent actions," including "receipts not deposited by Plaintiffs" and "loss of revenue because Plaintiffs, after being asked to vacate the motel, refused to leave and continued to live there without paying." The counterclaim alleges, "Although evicted by court order, Gongora and Ayala refused to leave and stayed at the motel for six additional days, again without paying." Defendant contends it "had to incur legal fees to evict Plaintiffs." Thus, the counterclaim is

based on the fact that, after being terminated and asked to vacate their room, Plaintiffs refused to leave and "Gongora and Ayala had to be judicially evicted," and even then stayed an additional six (per docket no. 23) or seven (per docket no. 42) days without paying. *See* Docket no. 42 at 3 ("Defendant, in its counterclaim, argues that Plaintiffs refused to leave their rooms when ordered."). However, Defendant's counterclaim and briefing fail to articulate the legal theory upon which this claim is based.

Defendant's counterclaim is further based on Defendant's allegations that Poole would keep payments from customers who paid in cash and have Gongora clean the rooms so that Defendant would not know the rooms had been rented. Defendant alleges that Poole would split the cash with Ayala and Gongora. Defendant contends that Poole admitted to this behavior and even returned $100 to Defendant. Docket no. 42 at 2.

In their motion, Plaintiffs state that they "did stay in their rooms after they were fired" because there "was no agreement regarding when the Plaintiffs should move out after their employment ended." Plaintiffs contend that, due to the lack of agreement, "there is just no way to determine whether they overstayed their right to stay" and "the counterclaim does not even specify which Plaintiffs allegedly overstayed their rooms" and even if Defendant wins its counterclaim, it "will not change the outcome of the Plaintiffs' FLSA claims."

Plaintiffs seek to dismiss Defendant's counterclaim for lack of jurisdiction, for failure to state a claim, and as improper retaliation for having brought this FLSA action. Plaintiffs move to dismiss Defendant's counterclaim as "objectively unreasonable" because it is "based on a different set of facts" and is "largely to vex this litigation and to act [as] a reprisal for the filing of this suit." Docket no. 34 at 8. Plaintiffs concede that Defendant filed eviction actions,

but contend they are "separate from Plaintiffs' FLSA action" and the counterclaim based on the evictions is not compulsory. Plaintiffs assert that the Court need not consider the claim. Plaintiffs also note that the counterclaim does not set forth a cause of action or legal theory, and it "can only be presumed that the legal right to recovery is based on state law in some way" and not under the FLSA and the Court therefore lacks supplemental jurisdiction. Docket no. 34 at 8.

Defendant contends that its counterclaim is compulsory as it is directly related to and arising from the same cause of action as Plaintiffs' FLSA claims because the termination, loss of revenue, and evictions resulted from Plaintiffs' actions that are the subject of their claims. Docket no. 41 at 4. Defendant contends that the counterclaim arises out of the same transaction because "all allegations in it are a direct result of Plaintiffs' employment, refusing to vacate their rooms, and theft of Motel 6 receipts." Docket no. 41 at 5. In the alternative, Defendant asserts they are permissive counterclaims and should be considered in this action. Defendant further contends the counterclaim is not retaliatory and the fact that Defendant utilized eviction proceedings ensured that Plaintiffs' tenancy and holdover rights were not violated. Docket no. 41 at 5-6.

Rule 13 divides counterclaims into two basic categories: compulsory and permissive. If the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," then the party must either assert it under the compulsory counterclaim provision in Rule 13(a) or waive the right to recover on it. FED. R. CIV. P. 13(a); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1403 (3d ed. 2010). To determine whether a counterclaim is compulsory, the

Fifth Circuit uses the "logical relation" test. *Ormet Primary Aluminum Corp. v. Ballast Tech., Inc.*, 436 F. App'x 297, 299 (5th Cir. 2011). The Court considers (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.

If the defendant's claim is independent of the plaintiff's claim, then the defendant has the option of bringing it in a separate suit or of asserting it under Rule 13(b) as a permissive counterclaim. Permissive counterclaims must either be supported by independent grounds of federal jurisdiction or fall within the supplemental jurisdiction of the court under 28 U.S.C. § 1367. Section 1367 does not draw a distinction between compulsory and permissive counterclaims and simply refers to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To determine whether to exercise supplemental jurisdiction over a state-law claim, the Court considers whether: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *Id*. § 1367(c).

In *Cordero v. Voltaire, LLC*, No. A-13-CA-253-LY, 2013 WL 6415667, at *3 (W.D. Tex. Dec. 6, 2013) (report and recommendation of Magistrate Judge, case later voluntarily

dismissed), the Magistrate Judge found that counterclaims asserting that the plaintiffs submitted fraudulent time sheets would be compulsory, given that the same operative facts concerning the number of hours worked were involved and both claims focused on whether the plaintiff was owed overtime compensation and, if so, how much. In contrast, the Magistrate Judge found that counterclaims for theft, conversion, and breach of fiduciary duty were permissive because the evidence needed to prove such claims was "entirely different than the evidence needed to prove Plaintiffs' FLSA claims." 2013 WL 6415667, at *5. The Magistrate Judge noted that "the only nexus between the FLSA claims and Voltaire's counterclaims is the employment relationship between the parties," and this was insufficient for a compulsory counterclaim or supplemental jurisdiction. Even if supplemental jurisdiction did exist, however, the Magistrate Judge stated he would recommend that the district court decline jurisdiction because of other compelling reasons, including hesitancy to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused. *Id.* (citing *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010)).

The Court finds that Defendant's counterclaims are not compulsory counterclaims as they do not pertain to whether Plaintiffs were employees and whether they are entitled to minimum wage or overtime payments. Many courts have found similar types of counterclaims to be permissive rather than compulsory because different evidence is needed to prove the claims and the only nexus is the employment relationship. *See e.g.*, *Rodriguez v. Horizontal Rentals, Inc.*, No. 5:18-CV-7-OLG, 2018 WL 7348031 (W.D. Tex. May 9, 2018) ("The damages alleged in connection with these claims bear no relationship to the hours worked,

Plaintiff's status as an exempt or non-exempt employee, or any overtime premium owed. Both for purposes of distinguishing between compulsory and permissive counterclaims under Fed. R. Civ. P. 13, and for purposes of the Court's supplemental jurisdiction under 28 U.S.C. § 1367, these claims do not share a common nucleus of operative fact with Plaintiff's FLSA claims; the "only nexus between the FLSA claims and [Defendant's] counterclaims is the employment relationship between the parties."); *Lou v. Ma Labs.*, No. C 12–05409 WHA, 2013 WL 3989425, at *2 (N.D. Calif Aug. 2, 2013) (finding that breach of contract and conversion counterclaims did not rest on the same operative facts as plaintiff's FLSA claim, and thus counterclaims were not compulsory); *Mendoza v. A & A Landscape & Irrigation, LP.*, No. 4:12–CV–562, 2012 WL 7005259 at * 2 (E.D. Tex. Dec. 5, 2012) (finding that defendant's counterclaims for conversion and theft were not compulsory in FLSA action); *Cortes v. Distribuidora Monterrey Corp.,* No. 3:08–CV–1077–M, 2008 WL 5203719 at * 1–2 (N.D. Tex. Dec. 11, 2008) (holding that defendants counterclaims for conversion, theft and breach of contract were not compulsory since they would require entirely different evidence than plaintiff's FLSA claim).[11]

The Court further agrees that, to the extent they may be permissive counterclaims, they should be dismissed. In *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042 (5th Cir. 2010), the Fifth Circuit affirmed the district court's dismissal without consideration of contract and fraud counterclaims, noting that "our precedent suggests that such claims should not be addressed in a FLSA action." The Court cited to its previous decision in *Brennan v. Heard*,

---

[11] *Compare Solano v. Ali Baba Mediterranean Grill, Inc.*, No. 3:15-CV-0555-G, 2015 WL 7770893, at *5 (N.D. Tex. Dec. 3, 2015) (holding counterclaims for theft of services and fraud were compulsory counterclaims and permitted "because the claims relate to the number of hours the plaintiff actually worked ... and whether the defendants owe him overtime wages under the FLSA.").

491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), in which it had previously explained why set-offs and counterclaims are inappropriate in a case brought to enforce the FLSA's minimum wage and overtime provisions:

> The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors. Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages. Arguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act. Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor.

*Id.*

In *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738 (5th Cir. 2010), the Fifth Circuit reiterated that "[i]n *Heard*, we said that set-offs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions." Based on these precedents, district courts in the Fifth Circuit routinely dismiss counterclaims that do not directly relate to Plaintiffs' wage claims, such as by challenging the amount of overtime hours worked or wages due. *See, e.g.*, *Beck v. Access eForms*, No. 4:16-CV-00985, 2018 WL 295414 (E.D. Tex. Jan. 4, 2018) (counterclaims for breach of contract, conversion of property, and violations of the Computer Fraud and Abuse Act, harmful access to a computer, and misappropriation of trade secrets should not be tried with plaintiff's FLSA claims); *Brewster*

*v. Wardlaw Claims Serv.*, No. 6:16-CV-00170-RP-JCM, 2016 WL 10827717 (W.D. Tex. Aug. 2, 2016) (counterclaim for destruction and conversion of data dismissed) (report and recommendation adopted); *Alford v. State Parking Servs. Inc.*, No. 3:13–CV–4546–L, 2014 WL 6977639 (N.D. Tex. Dec. 10, 2014) (counterclaims for defamation; business disparagement, breach of fiduciary duty, tortious interference with an existing contract, tortious interference with prospective relations, and breach of contract dismissed). Thus, Defendant's counterclaims, which do not directly relate to Plaintiff's wage claims and instead would act as set-offs, should be dismissed.

**Defendant's affirmative defense of "fraud"**

The Amended Answer alleges an affirmative defense of "fraud" under Rule 8(c), asserting that Plaintiffs "conspired to commit a fraud on Defendant," based on the following: (1) Plaintiffs are fraudulently contending that Ayala was an employee to obtain compensation; (2) Poole and Gongora took receipts from the Motel 6 by keeping cash when customers paid in cash, and Gongora would clean the room to make it appear it had never been occupied and Defendant would not know that a guest had occupied the room, causing a serious financial loss to Defendant; (3) non-party Victor Alvarez approached Defendant and claimed that while he was away for several days, he had helped Gongora clean rooms and was owed nine hours of pay, for which Defendant wrote a check for $67.95, and the bank later called to advise that Alvarez was there to cash a check for $967.95; and (4) "As part of the continuing fraud conspiracy, Poole has been calling Defendant and asking that she be allowed to live in a room at Motel 6," as to which Defendant "suspect[s] that she [is] still attempting to defraud or

fabricate something against Motel 6" and "[t]here is now a question as to who directed her to attempt this." Bhavisha Patel Aff. at 2.

Plaintiffs contend that "equitable defenses are not available under the FLSA" and "there is no provision in the FLSA that excuses payment of wages for alleged fraud." Plaintiffs move to dismiss Defendant's affirmative defense.

Rule 12(f) authorizes the Court, either in response to a motion from a party or on its own initiative, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Dismissal of an affirmative defense is permitted if the defense asserted is invalid as a matter of law and if the plaintiff shows its presence in the proceeding will be prejudicial. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d, 1045, 1057 (5th Cir. 1982); *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993). "What constitutes an invalid defense depends upon the nature of the claim for relief and the defense in question." *See Equal Employment Opportunity Comm'n v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980). A defense is insufficient as a matter of law if the defendant's allegations would not constitute an affirmative defense even if they were meritorious. *Id.*

Other than Defendant's claim that Ayala is fraudulently asserting that she is an employee, the alleged "frauds" in Defendant's affirmative defense do not directly relate to or avoid Plaintiffs' FLSA claims, as they do not assert that Plaintiffs submitted any fraudulent statements concerning their wages or employment to Defendant upon which Defendant relied. And the alleged "fraud" in Ayala's claim to employment is more of a denial of an employment relationship than an affirmative defense of fraud, given that Defendant has shown no alleged

misrepresentation outside this lawsuit and has shown no reliance upon any alleged fraudulent misrepresentation. Defendant's assertion that Ayala is fraudulently claiming to have been employed to obtain compensation in this lawsuit is not a valid fraud affirmative defense, and should be dismissed.

In *Rodriguez v. Horizontal Rentals, Inc.*, No. 5:18-CV-7-OLG, 2018 WL 7348031 (W.D. Tex. May 9, 2018), the court granted the plaintiff's motion to strike counterclaims and affirmative defenses based on same analysis because "courts have treated the two as the same." *Id.* (citing *Vizcaino v. Techcrete Contracting, Inc.*, A-13-CA-229-SS, 2014 WL 819449, at *2 (W.D. Tex. Mar. 3, 2014)). Thus, the other fraud defenses should be dismissed as well for the same reasons that the counterclaims should be dismissed.

## Conclusion

Plaintiffs' Motion (docket no. 34) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' motion for partial summary judgment on Defendant's liability is DENIED. Plaintiffs' motion to strike Defendant's counterclaims and affirmative defenses, contained within the Motion for Partial Summary Judgment, is GRANTED, and Defendant's affirmative defense and counterclaims are DISMISSED WITHOUT PREJUDICE.

SIGNED this 15th day of August, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE